IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAUL HERRERA, | § § § § § § § § § § § § § § | |
| *Plaintiff*, | | 5-19-CV-00888-RBF |
| vs. | | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY; | | |
| *Defendant*. | | |

**ORDER**

This Order concerns Plaintiff Raul Herrera's request for judicial review of the administrative denial of his application for disability-insurance benefits under Title II of the Social Security Act. This action was assigned pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules and the docket management order entered on October 8, 2019, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration, *see* 42 U.S.C. § 405(g), and the Court has authority to enter this order pursuant to 28 U.S.C. § 636(c) because both parties have consented to magistrate judge jurisdiction. *See* Dkt. Nos. 8, 9, & 12.

After considering Herrera's Brief, Dkt. No. 13, the Brief in Support of the Commissioner's Decision, Dkt. No. 14,[1] the transcript of the administrative proceedings ("Tr."), Dkt. No. 10, the other pleadings on file, the applicable authorities and regulatory provisions, and the entire record in this matter, the Court finds that substantial evidence supports the

---

[1] Herrera chose not to file a Reply Brief.

Commissioner's decision and that the administrative proceedings involved no reversible legal error. The Commissioner's decision is therefore **AFFIRMED**.

## Factual and Procedural Background

Plaintiff Herrera filed his application for disability-insurance benefits in mid-March 2017.[2] He alleged a disability onset date of January 1, 2015, which he later amended to May 28, 2007. *See* Tr. 166, 237-39.[3] He alleged that the following impairments render him disabled: arthritis; chronic back pain; Alzheimer's disease; diabetes; hyperlipidemia; hypertension; depression; and dementia. *Id.* 53. Herrera's claim was initially denied on May 24, 2017, *id.* 53-61, and once again on August 8, 2017, after he requested reconsideration, *id.* 62-71. Following the denial of his benefits claim, Herrera requested and received an administrative hearing. *Id.* 24-47; 83-98;100-142. Herrera and his attorney attended the hearing on May 6, 2017, at which Herrera, his wife, and a vocational expert testified. *Id.* 24-47.

The ALJ denied Herrera's claim for benefits. *Id.* 22-43. In reaching that conclusion, the ALJ first found that Herrera met the insured-status requirements of the Social Security Act through March 31, 2015. *Id.* 10. Accordingly, the ALJ applied the five-step sequential analysis required by the regulations to determine whether Herrera was under a disability within the meaning of the Social Security Act from May 28, 2007, through March 31, 2015. *Id.* 10-18. At step one, the ALJ found that Herrera had not engaged in substantial gainful activity during the period from his alleged onset date through his last-insured date. *Id.* 12. At step two, the ALJ found Herrera had the following severe impairments: neurocognitive disorder; post-traumatic

---

[2] There is a minor discrepancy regarding the date Herrera sought benefits. Herrera's Application for Disability Insurance Benefits, *id.* 166, states that he applied for benefits on March 14, 2017. The ALJ, however, asserted that Herrera filed his application on March 13, 2017. *See id.* 10. This one-day differential is not material here.

[3] Herrera also sought supplemental social security benefits in March 2017, *id.* 156-65, but that request isn't relevant here.

stress disorder (PTSD); depressive disorder, panic disorder; generalized anxiety disorder; and hearing loss. *Id.* 12-13. At step three, the ALJ found that none of Herrera's impairments met or medically equaled the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 13-14.

Before reaching step four of the analysis, the ALJ found that through the date of last insured, Herrera retained the physical capacity to perform a full range of work at all exertional levels except that he "was limited to simple, routine repetitive work and simple work related decisions" and "could not work in loud or very loud noise environments, as defined by the Selected Characteristics of Occupations (SCO)." *Id.* 14. In reaching this conclusion, the ALJ gave Herrera's claim a boost and afforded "little weight" to the state agency's findings that Herrera had no medically determinable mental impairment prior to his last-insured date, reasoning that "the medical evidence as a whole warrants more restrictive findings." *Id.* 16.

At step four, after considering Herrera's residual functional capacity and the testimony of the vocational expert, the ALJ determined that Herrera wasn't able to perform any past relevant work as: a sales representative/home; regional sales manager; automobile salesman; claims clerk; or maintenance repairer/building. *Id.* 16-17. At step five, however, the ALJ determined that considering Herrera's age, educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, Herrera could perform the following jobs existing in significant numbers in the national economy: kitchen helper (Dictionary of Occupational Titles (DOT) # 318.687-010) and industrial cleaner (DOT #381.687-018)—positions that the DOT classifies at the medium exertional level and unskilled. *Id.* 17. Accordingly, the ALJ determined that Herrera was not disabled through the date of last insured, and therefore was not entitled to receive benefits. *Id.*

Herrera requested review of the ALJ's finding, which the Appeals Council denied. *Id.* 1-6. Accordingly, on July 25, 2019, after exhausting all available administrative remedies, Herrera sought judicial review of the administrative determination. Dkt. No. 1.

**Legal Standards**

*Standard of Review*. To review the denial of benefits, a court determines whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Factual findings supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant like Herrera is disabled only if his physical or mental impairment or impairments are so severe that he is unable to perform his previous work and cannot—considering his age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy (regardless of whether such work exists in the area in which he lives, a specific job vacancy exists, or he would be hired if he applied for work). 42 U.S.C. § 423(a)(1).

*Overview of the Evaluation Process and Burden of Proof*. "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents him [or her] from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id.*; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotations omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of

performing the work he has actually performed in the past or as defined by the DOT, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

Herrera presents the following single issue in this Court: whether the ALJ failed to fully and fairly develop the record in performing a residual-functional-capacity assessment. To that end, Herrera urges that in the absence of any medical opinion assessing his functional limitations, the ALJ should've (but didn't) seek a medical opinion on the issue. This error, Herrera argues, was compounded by the ALJ's failure to consider the opinion of Dr. Robert Jimenez—the only physician of record to address Herrera's work-related limitations caused by

some of his impairments. Accordingly, Herrera claims that the ALJ impermissibly played doctor, relying on his lay medical opinion to develop Herrera's residual functional capacity.

For the reasons discussed below, the Court finds substantial evidence supports the Commissioner's decision, and the administrative proceedings involved no reversible legal error.

A.  *Residual Functional Capacity*. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "Usually," this means that an ALJ should request a medical opinion describing the work that a claimant is capable of performing. *Id.* "The absence of such a statement, however, does not, in itself, make the record incomplete." *Id.* Accordingly, to the extent Herrera argues that an ALJ necessarily commits reversible error by failing to obtain a medical opinion addressing a claimant's work-related limitations, that argument runs contrary to Fifth Circuit precedent. *See id.* Instead, "where no medical statement has been provided, [the Court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.*

Here, the ALJ determined there was "no persuasive evidence [that Herrera's] impairments impeded his ability to perform simple tasks with restricted noise environments prior to his date last insured." Tr. 15. In support, the ALJ noted the lack of treatment records addressing Herrera's mental impairments until 2012, notwithstanding his alleged onset date of May 28, 2007. *Id.* And when Herrera first complained of memory loss on July 12, 2012, an MRI of his brain revealed no abnormalities. Lab-work results were also relatively normal. *Id.* (citing *id.* 625); *see also id.* 620. At that time, Herrera also scored a 30/30 on his Mini-Mental State Examination (MMSE)—a test administered and used to evaluate a person's cognitive performance. *See id.*; American Family Physician, MiniMental State Examination for the

Detection of Dementia in Older Patients, available at https://www.aafp.org/afp/2016/1201/p880.html (last accessed Jul. 27, 2020). Accordingly, Herrera's neurologist concluded that Herrera didn't meet the criteria of Alzheimer's disease and in fact had "very adeq[uate] cognition" with no neurological limitations. *Id.* 625.

Later, in July 2014, Herrera's results were much the same. Herrera again scored a 30/30 on the MMSE, *id.* 477, and an MRI of his brain revealed no acute intracranial abnormality, *id.* 15, 1376. Although Herrera indicated mild difficulty with recall, he reported running his own business, driving without incident, reading, paying bills, and—generally speaking—being "on top of everything." *Id.* 15, 476. Herrera's neurologist opined that any resulting memory loss was normal for a 61-year old, and Herrera was released without any limitations. *Id.* 307, 479.

Approximately six months later, Herrera's December 2014 neurological examination revealed he was oriented in all spheres with intact judgment. *Id.* 15, 450, 465. And, notably, on March 16, 2015—just two weeks before Herrera's date of last insured—Herrera denied any decreased functioning ability, and no abnormalities were noted upon examination. *Id.* 15, 434. Finally, a May 2015 CT scan of Herrera's brain—performed two months after his date of last insured—was again within normal limits. *Id.* 15. Taking all of this evidence into account, the ALJ concluded "there is no persuasive evidence [Herrera] had more than mild to moderate impairment in acquiring and using information, attention and concentration, interacting with others, or adapting and managing himself prior to his date last insured." *Id.* 15-16.

Although the ALJ recognized that Herrera's symptoms increased in severity after his last-insured date, *id.* 16, the record fails to suggest that Herrera suffered from anything more than mild cognitive defects prior to March 31, 2015. *Cf. Ripley*, 67 F.3d at 557 (reversing and remanding where the record included a "vast amount of medical evidence" establishing the

9

plaintiff had back problems but didn't include evidence "clearly establish[ing] the effect [the claimant's] condition had on his ability to work). Indeed, Herrera himself repeatedly denied any decreased functioning during the relevant period of disability. *Id.* 15, 434, 476. Accordingly, substantial evidence supports the ALJ's residual functional capacity assessment, notwithstanding the lack of a medical opinion on the issue. *See, e.g.*, *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (ALJ's residual-functional-capacity assessment was supported by substantial evidence where claimant's medical records failed to corroborate his complaints of pain); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (ALJ's residual-functional capacity determination was based on substantial evidence even where the ALJ rejected all medical opinions of record). Moreover, "[w]hat [Herrera] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor*, 706 F.3d at 603.

The ALJ also didn't err in failing to discuss the June 23, 2017, opinion of Dr. Jimenez, as Herrera suggests. In the opinion, Dr. Jimenez diagnosed Herrera with PTSD and opined that Herrera was "unable to be gainfully employed." Tr. 2217-18. To start, although the ALJ didn't expressly mention Dr. Jimenez's opinion, the ALJ acknowledged Herrera's PTSD diagnosis and categorized it as a severe impairment. *See* Tr. 12. The ALJ also implicitly rejected Dr. Jimenez's opinion that Herrera's PTSD rendered him unemployable prior to March 31, 2015, noting "[t]here is no medical opinion from any medical source indicating [Herrera] was entirely incapable of working *prior to his date last insured*." Tr. 16 (emphasis added). Herrera correctly notes that "PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it." *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (quotations omitted), But nothing in Dr. Jimenez's opinion suggests that Herrera's PTSD manifested itself

prior to his date of last insured—at least to the level of severity discussed by Jimenez. *See McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006) (explaining that a retrospective medical opinion is only relevant where it "refer[s] clearly to the relevant period of disability and [doesn't] simply express an opinion to the claimant's current status"); *see also Thomas v. Colvin*, 587 F. App'x 162, 165 (5th Cir. 2014) (evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition isn't relevant). In fact, Herrera reportedly owned a handyman business throughout the relevant alleged period of disability. *See* Tr. 189. Nor does Herrera cite any other medical records or lay testimony suggesting that his PTSD rendered him functionally limited prior to his last-insured date. *Cf. Likes*, 112 F.3d at 189 (noting that "*properly corroborated* retrospective medical diagnoses can be used to establish disability onset dates") (emphasis added). The only medical record cited by Herrera is a May 2017 treatment note from Herrera's psychologist noting that Herrera's PTSD and Alzheimer's symptoms only *recently* manifested "over [the] past few months," "coincident with [Herrera's] cognitive decline." Pl. Br. at 7 (citing Tr. 1705).

*No Prejudice*. Even assuming the ALJ erred by failing to fully develop the record, any such alleged error wouldn't merit reversal here because Herrera hasn't shown sufficient prejudice. *See Ripley*, 67 F.3d at 557. Herrera argues that review by a medical expert would have resulted in a decision based on a medical opinion rather than an ALJ "playing doctor." Pl. Br. at 13. He further urges that an expert reviewing the entire record, including his November 2016 mild neurocognitive-disorder diagnosis, could have assessed him with greater work-related limitations during the relevant period. *Id.* But as discussed above, an ALJ doesn't err by failing to obtain a medical-source statement addressing a claimant's functional limitations where the decision is supported by substantial evidence. *See Ripley*, 67 F.3d at 557; *see also Joseph-Jack v.*

*Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) ("We also reject Joseph–Jack's argument that because the record was devoid of a residual function capacity (RFC) assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion."). Moreover—and more to the point regarding prejudice—to establish prejudice Herrera must "show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 737 (5th Cir.1996) (quotations omitted). Herrera's unsupported assertion that a medical expert *might* have assessed him with greater work-related limitations is insufficient to warrant reversal. He points to no evidence suggesting that a mild neurocognitive-disorder diagnosis made well after his last-insured date would have led to a finding of greater mental-functional deficits prior to March 31, 2015, than the ALJ assessed here.

## Conclusion and Recommendation

For the reasons discussed above, substantial evidence supports the Commissioner's decision and the administrative proceedings involved no reversible legal error. The Commissioner's decision that Herrera is not disabled is therefore **AFFIRMED.**

**IT IS SO ORDERED.**

SIGNED this 25th day of September, 2020.

                                            RICHARD B. FARRER
                                            UNITED STATES MAGISTRATE JUDGE